IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

---

No. 94-50197

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,,

versus

ARMANDO MELENDEZ,

Defendant-Appellant.

---

Appeal from the United States District Court for the
Western District of Texas
(92-CR-133-1)

---

January 25, 1996

Before GARWOOD, SMITH and DENNIS, Circuit Judges.[*]

PER CURIAM:

Defendant-appellant Armando Melendez (Melendez) was found guilty of conspiring to import a quantity of more than one hundred kilograms of marihuana in violation of 21 U.S.C. §§ 952(a), 960(a)(1) and 963. On appeal, this Court remanded appellant's conviction to the district court to determine whether the presentence investigation reports (PSRs) of various government witnesses contained *Brady* or *Giglio* material and, if so, whether a

---

[*] Pursuant to Local Rule 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in Local Rule 47.5.4.

new trial was required. In addition, this Court vacated Melendez's sentence and remanded to the district court for resentencing. Melendez appeals the district court's judgment and resentencing. We affirm.

**Facts and Proceedings Below**

Melendez was charged together with fourteen other named defendants pursuant to a superseding indictment filed on May 6, 1992, with numerous crimes relating to a large-scale marihuana importing operation spanning seven years (1985-1992). The district court granted a severance to Melendez and his co-defendant Octavio Carreon, and the two were tried together for: (1) conspiring to import a quantity of more than one hundred kilograms of marihuana in violation of 21 U.S.C. §§ 952(a), 960(a)(1) and 963; (2) conspiring to possess more than one hundred kilograms of marihuana with intent to distribute, in violation of 21 U.S.C. §841(a)(1); and (3) bribing a public official in violation of 18 U.S.C. § 201(b)(1).

Based largely on the testimony of the defendants' alleged co-conspirators, the jury found Melendez guilty of conspiring to import marihuana, but acquitted him on the other two counts. On appeal, this Court remanded Melendez's conviction to the district court to determine by "in camera inspection" whether the PSRs prepared for these co-conspirators—who had served as government witnesses against Melendez—contained exculpatory or impeachment information under *Brady* or *Giglio*. *United States v. Carreon*, 11 F.3d 1225, 1238 (5th Cir. Jan. 5, 1994). In addition, this Court

vacated Melendez's sentence and remanded to the district court with instructions that it make findings in support of its resentencing of Melendez. *Id*. at 1235-38.

On remand, the district court reviewed the PSRs of the cooperating co-conspirators and concluded that they contained no *Brady* or *Giglio* material; alternatively, the court observed that, "[I]f any such information is contained in any one or more of these reports, the Court finds that it could not have affected the outcome of Melendez' trial, and that the failure to disclose such information . . . was harmless error." April 4, 1994, Order After Remand at 4, in *United States v. Melendez*, No. EP-92-CR-133-H (W.D.Tex. 1994). Consequently, the district court resentenced Melendez to 360 months' imprisonment, five years of supervised release, and a fine of $100,000—the same sentence Melendez originally received.[1]

Thereafter, on April 19, 1994, this Court issued a Supplemental Opinion in which we observed:

> "The district court found that [the PSRs at issue] contained no material *Brady* or *Giglio* information. Our independent review of the same PSRs leads us to the same conclusion. . . . For the foregoing reasons, Melendez's judgment of conviction is AFFIRMED." *United States v.*

---

[1]  After reviewing the evidence regarding the constituent amounts of marihuana attributable to Melendez, the district court reduced the total amount of marihuana (from the district court's original finding) by approximately 9,000 kilograms. Nevertheless, even after making this reduction in the total amount of marihuana attributable to Melendez, this revised total still exceeded 100,000 kilograms; therefore, Melendez's original base offense level of forty remained the same. Furthermore, Melendez's two-level upward adjustment for his role in the offense, as well as his criminal history category, obviously remained unchanged as well.

*Carreon*, No. 92-8682 at 2-3 (5th Cir. April 19, 1994) (unpublished).

## Discussion

This Court's Supplemental Opinion of April 19, 1994, provides the law of the case, and Melendez fails to demonstrate that the present appeal from the resentencing should be permitted insofar as it relates to his conviction. However, even if the issues raised by Melendez respecting his conviction on the present appeal had not already been resolved by the prior January 4 and April 19, 1994, opinions of this Court, this Court would nevertheless affirm the district court's conviction of Melendez, as well as his resentencing on remand.

Melendez raises several contentions on appeal. First, he contends that the district court erred in denying his post-conviction motion for judgment of acquittal because the evidence against him was insufficient to support his conviction. Principally, Melendez maintains that his *conviction* for conspiring to import marihuana and his *acquittal* for knowingly possessing marihuana with the intent to distribute it constitute "fatally inconsistent" jury verdicts. Considering the distinct elements of these two offenses, it is not at all clear that these verdicts are inconsistent; however, even if they were "truly inconsistent", this Court has observed that:

> ". . . The most that can be said . . . is that the verdict shows that either in the acquittal or the conviction the jury did not speak their real conclusions, but that does not show that they were not convinced of the defendant's guilt." *United States v. Scurlock*, 52 F.3d 531, 537 (5th Cir. 1995) (quoting *United States v. Powell*, 105 S.Ct. 471, 475 (1984)).

4

Therefore, even where the verdicts are truly inconsistent, the jury's decision to acquit on one of the counts does not require reversal of the defendant's conviction on the other count. *Id.* at 538.[2]

In his second argument on appeal, Melendez contends that the district court erred by failing to inspect *in camera* the PSR prepared on April 11, 1991, for Charles Aragon (Aragon), an important government witness, in contravention of this Court's instructions on remand. Melendez points out that the PSR relating to Aragon actually inspected *in camera* by the district court was a PSR prepared on September 28, 1992.[3] Based on this, Melendez contends that the district court's inspection of the government witnesses' PSRs—ordered by this Court—was incomplete; he argues that, in conducting an inspection for exculpatory or impeachment information, the first PSR would be particularly insightful as Aragon was allegedly already cooperating with the government at the time the first PSR was prepared.

---

[2]  In his only other contention that the evidence against him was insufficient, Melendez challenges the credibility of the government's witnesses—an assessment clearly within the sole province of the jury.

[3]
The "first" (April 11, 1991) PSR was prepared in connection with Aragon's "first" sentencing by the district court for his participation in the drug distribution operation. Aragon's 1991 conviction was subsequently appealed and reversed, and Aragon was granted a new trial. Before he could be retried, Aragon pleaded guilty; the "second" (September 28, 1992) PSR was prepared in connection with the district court's sentencing pursuant to this plea. For convenience, these PSRs will be referred to as Aragon's "first" and "second" PSRs.

However, on May 3, 1995, the government—by unopposed motion—supplemented the record in this case by filing a copy of Aragon's first PSR. There is no dispute that the PSR so furnished by the government is the same (April 11, 1991) PSR that Melendez has put at issue. It is likewise clear that Aragon contributed nothing to this PSR that would implicate *Brady* or *Giglio*. In fact, "[o]n the advice of counsel, Aragon did not provide *any* statements to the probation officer regarding his role in the offense." April 11, 1991, Presentence Report at ¶ 56, in *United States v. Aragon*, No. EP-90-CR-388B (W.D.Tex. 1991)(emphasis added).[4] Therefore, we find that it would be a waste of time and resources to remand this case to the district court in order for that court to inspect this first PSR *in camera* for *Brady* and *Giglio* information contributed by Aragon.

In a footnote in his brief, Melendez makes a passing reference relating to the district court's failure to inspect *in camera any* PSR prepared in connection with the sentencing of government witness Jose Guzman (Guzman). In its April 4, 1994, Order After Remand, *supra,* the district court asserted that it had been unable to uncover any information that Guzman had ever been convicted in either Texas or New Mexico. Melendez's footnote asserts that

---

[4] During oral argument on the present appeal, the government informed this Court of Aragon's decision not to contribute anything—potentially exculpatory for Melendez or otherwise—to this first PSR. At that time, counsel for Melendez expressed a willingness to allow this Court to examine the April 11, 1991, PSR in order to determine whether its contents justified remand to the district court for a thorough *in camera* review in light of *Brady* and *Giglio.*

6

Guzman was convicted in the United States District Court for the District of New Mexico of drug trafficking offenses. Although Melendez fails to provide a cause number for, or the date of, this alleged conviction, he notes that Guzman responded to questioning under oath at Melendez's trial that he had been convicted of a "marihuana offense" in 1990. March 15, 1995, Corrected Initial Brief of Appellant at 26 n.15, in *United States v. Melendez*, No. 94-50197. We need not reach the issue of whether the district court erred in failing to locate and inspect this missing PSR, however, as counsel for Melendez—in oral argument on the present appeal—in substance conceded that this PSR was of little consequence because Guzman was not cooperating with the government at the time this PSR would have been prepared. Furthermore, there is nothing to suggest that Guzman's purported 1990 conviction for drug trafficking was connected to the drug operation underlying Melendez's present conviction.

In his final argument, Melendez contends that the district court erred in its determination of the quantity of marihuana attributable to him for sentencing purposes. This argument is meritless, however, as it is clear that the district court not only considered Melendez's specific objections on this issue, but actually reduced the amount of marihuana originally attributed to Melendez based on the probation officer's recommendation.[5] There

---

[5] The probation officer recommended that Melendez's offense conduct involved a total of approximately 131,353 kilograms of marihuana, and the district court accepted this recommended finding when it originally sentenced Melendez following his trial in

7

is likewise no merit to Melendez's suggestion that the district court erred by approximating certain of the constituent amounts of marihuana attributable to him over the course of this conspiracy. The United States Sentencing Guidelines recognize that approximation is permissible "[w]here there is no drug seizure . . . ." U.S.S.G. § 2D1.1 comment. (n.12). In the present case, in which certain evidence of the constituent amounts of drugs involved over the course of this lengthy conspiracy was necessarily derived from the testimony of eyewitnesses—and not from a recovery of the drugs involved—such approximation was unavoidable. We conclude that the district court's findings are sufficient and that it did not err in determining the total quantity of drugs attributable to Melendez for sentencing purposes.

## Conclusion

Melendez's judgment of conviction and sentence is

AFFIRMED.

---

October 1992. On remand, the district court excluded certain quantities of marihuana to which Melendez had objected, reducing the total amount by more than 9,000 kilograms.